## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCUS DILWORTH,          )
#233902,                  )
                          )
     Petitioner,        )
                          )
VS.                       )          2:07-CV-1060-MEF
                          )              (WO)
                          )
RICHARD ALLEN, *et al.*,  )
                          )
     Respondents.       )

## ANSWER

Come now the Respondents in the above-styled cause, by and through the

Attorney General of the State of Alabama and in response to this Honorable

Court's Order to Show Cause state the following:

## PROCEDURAL HISTORY

1. On January 30, 2004, Dilworth was convicted in Montgomery County

Circuit Court of reckless manslaughter, assault in the first degree and attempted

murder. He was sentenced to 20 years imprisonment for the reckless manslaughter

conviction and 10 years imprisonment for each of the other two convictions. The

assault and attempted murder sentences were to run concurrently to each other and

consecutively to the 20 years manslaughter sentence. (Exhibit "A")

2. On direct appeal, Dilworth argued five grounds that included: 1) sufficiency of the evidence; 2) improper sentence enhancement; 3) jury instruction error; 4) improper denial of continuance; and, 5) excessive sentence. On October 22, 2004, the Alabama Court of Criminal Appeals affirmed the convictions in a memorandum opinion. (Exhibit "A") No rehearing was taken and no petition for writ of certiorari was filed. On November 10, 2004, a certificate of final judgment was issued. (Exhibit "B")

3. On October 21, 2005, Dilworth filed a petition for relief in circuit court under Rule 32, Ala.R.Crim.P. alleging ineffective assistance of trial counsel. Grounds important to the present federal habeas corpus action that were raised included counsel failing to object to jury not being properly sworn and that counsel did not properly prepare for trial. Following the circuit court's denial of his Rule 32 petition, Dilworth appealed presenting the aforementioned ineffective assistance of counsel grounds along with several others; however, he failed to raise a claim concerning counsel's failure to object to an alleged erroneous jury charge. (Exhibit "C")

4. On June 23, 2006, the Alabama Court of Criminal Appeals affirmed the denial of the Rule 32 petition in a memorandum opinion based upon the lack of merits of Dilworth's claims and Dilworth's failure to meet his burden of proof established by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). (Exhibit "C")

Following the denial of a petition for writ of certiorari, the Alabama Supreme

Court issued a certificate of judgment on December 8, 2006. (Exhibit "D")


## ARGUMENT

5. To begin, Dilworth waited one day less than one year from the date his

appeal became final on October 22, 2004 to file his Rule 32 petition on October 21,

2005. He then waited four days less than one year from when his appeal of the

Rule 32 petition became final on December 8, 2006, to file the present federal

habeas corpus petition on December 4, 2007. These two period, taken together

represent more than the one-year period of limitation set forth in 28 U.S.C. §

2244(d), therefore the present federal habeas corpus petition is due to be denied as

untimely.

6. Dilworth's claim that trial counsel did not prepare for trial was

specifically addressed by the Alabama Court of Criminal Appeals and found to be

without merit. Because it was adjudicated on the merits by the state court, it is due

to be denied under 28 U.S.C. § 2254(d).

7. Dilworth's claim concerning trial counsel failing to object to the jury not

being sworn properly, the appellate counsel did not specifically address this issue,

however it did find as a procedural matter that Dilworth had failed in his burden of

proof regarding ineffective assistance of counsel under Strickland v. Washington,

supra.  Moreover, Dilworth admits in his habeas petition that the jury was properly sworn with the required oath the day before voir dire.

8.  Dilworth's last ground involves counsel's alleged failure to object to an erroneous jury charge; however, he did not present this claim to the state courts. Because this claim was not raised at all in state court, it is procedurally barred from habeas corpus review.  Teague v. Lang, 489 U.S. 288, 297-298 (1989).

9.  The present petition contains mere bare allegations unsupported by any facts.  Because Dilworth has failed in his pleading burden, the present federal habeas corpus petition is due to be dismissed and denied.

### EXHIBITS

Exhibit "A" -    Memorandum Opinion, CR-03-0861;

Exhibit "B" -    Certificate of Judgment, CR-03-0861;

Exhibit "C" -    Memorandum Opinion, CR-05-0840;

Exhibit "D" -    Certificate of Judgment, CR-05-0840;

Respectfully submitted,

Troy King, (KIN047)
*Attorney General*
By-

/s/Cecil G. Brendle, Jr.
Cecil G. Brendle, Jr. (BRE005)
*Assistant Attorney General*

4

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2008, I electronically filed the foregoing Answer (including exhibits) with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document (including exhibits) to the following non-CM/ECF participants:   Marcus Dilworth, AIS #233902, Bullock Correctional Facility, P.O. Box 5107, Union Springs, AL  36089-5107.

Respectfully submitted,

/s/Cecil G. Brendle, Jr. (BRE005)
Cecil G. Brendle, Jr. (BRE005)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 242-2848
E-Mail:  cbrendle@ago.state.al.us

379583/116702-001



Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

**P. O. Box 301555**

**Montgomery, AL 36130-1555**

**RELEASED**

OCT 2 2 2004

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

MEMORANDUM

CR-03-0861                    Montgomery Circuit Court CC-03-0251

<u>Marcus C. Dillworth v. State of Alabama</u>

SHAW, Judge.

The appellant, Marcus C. Dillworth, was indicted for intentional murder, a violation of § 13A-6-2, Ala. Code 1975, and for two counts of attempted murder, violations of §§ 13A-6-2 and 13A-4-2, Ala. Code 1975. He was convicted of reckless manslaughter, a violation of § 13A-6-3(a)(1), Ala. Code 1975, as a lesser-included offense of intentional murder; of assault in the first degree, a violation of § 13A-6-20(a)(1), Ala. Code 1975, as a lesser-included offense of one of the attempted-murder charges; and of attempted assault in the first degree, a violation of §§ 13A-6-20(a)(1) and 13A-4-2, Ala. Code 1975, as a lesser-included offense of the second attempted-murder charge. He was sentenced to 20 years'

imprisonment for the manslaughter conviction; to 10 years'
imprisonment for the first-degree assault conviction; and to
10 years' imprisonment for the attempted first-degree assault
conviction. The sentences for assault and attempted assault
were ordered to run concurrently with each other and
consecutively with the sentence for manslaughter.[1]

I.

Dillworth contends that the evidence was insufficient to
support his convictions. (Issue IV in Dillworth's brief.)
More specifically, he argues that the State's evidence did not
disprove his theory that he acted in self-defense. Dillworth
makes his argument in terms of both the sufficiency of the
evidence and the weight of the evidence; as he properly argued
both before the trial court, we address each.

The evidence adduced at trial indicated the following.
Sometime in early September 2002, Joseph Loza backed his truck
out of his driveway and struck Dillworth's automobile which
was parked across the street; Dillworth agreed to allow Loza

---

[1]By order issued on September 3, 2004, this Court remanded
this case for the trial court to clarify whether it had
applied the firearm-enhancement statute in sentencing
Dillworth. See § 13A-5-6(a)(5), Ala. Code 1975. On appeal,
Dillworth argued that the trial court "erred in allowing a
sentencing enhancement for use of a firearm during the
commission of the offense." (Issue II in Dillworth's brief at
p. 33.) See, e.g., Ex parte McCree, 554 So. 2d 336 (Ala.
1988); and Railey v. State, 710 So. 2d 477 (Ala. Crim. App.
1996). Dillworth conceded in his brief that it was "unclear
whether the sentencing Court intended to exercise the
sentencing enhancements for use of a firearm in imposing the
sentence and the Record on Appeal is otherwise silent to that
issue [but stated that it] could be assumed that the
sentencing Court did intend on exercising the enhancements as
suggested in the Pre-Sentence Report." (Dillworth's brief at
p. 36.) On return to remand, the trial court has submitted an
order indicating that it did not apply the firearm-enhancement
statute to Dillworth's sentence. Therefore, Dillworth's claim
that the trial court improperly applied the firearm-
enhancement statute is meritless.

2

to pay him for the damages without calling the police because
Loza claimed to have outstanding capias warrants. On
September 13, 2002, Dillworth spoke with Loza at Loza's
residence about the status of his payment. On September 15,
2002, Dillworth again went to Loza's residence and inquired
about the status of his payment; at the conclusion of that
conversation in the front yard, Dillworth left the yard and
walked back to his automobile. James Lawrence Anderson, who
resided with Loza, approached Dillworth and loudly slammed a
hammer into the bumper of Loza's truck parked in the driveway;
at that time, Dillworth pulled out a pistol before getting
into his automobile and driving across the street to his
friend's house.[2]  Both Loza and Dillworth placed calls to
emergency-911 to report the incident; the police came,
questioned the parties, and impounded Dillworth's 9-millimeter
Bryco Jennings pistol for one day after ascertaining that he
had no warrants and carried a valid pistol permit -- no
charges were filed as a result of that incident.

At approximately 2:00 a.m. on the morning of October 14,
2002, Dillworth knocked on the door of Loza's residence.
According to Anderson, Loza went outside and spoke with
Dillworth and then they both came inside the residence and sat
on the couch across from where Anderson was seated in a chair.
Anderson testified that Dillworth then stood up, pulled out a
pistol, and shot Loza on the top of his head. Anderson stated
that Dillworth then immediately turned and shot him in the
face; according to Anderson, he was able to get up and run
from the house, at which time he began banging on his
neighbors' doors until somebody finally called the police and
an ambulance.

Linda Rickard, Loza's aunt, also lived in the residence
with Loza. According to Rickard, she was back in her bedroom
with her dogs when she heard what sounded like firecrackers;
she testified that Dillworth entered her bedroom and fired at

---

[2]There was conflicting evidence as to whether Dillworth
had already gotten into his automobile and then got out of the
vehicle when Anderson struck the truck with the hammer, or
whether he was merely walking toward his vehicle at that
point.

her before fleeing from the residence after one of the dogs jumped at him.[3]

Loza was pronounced dead at the scene, Anderson was transported to the hospital for treatment of a gunshot wound to the mouth, and Rickard was uninjured. Law enforcement officers and a forensic scientist from the Alabama Department of Forensic Sciences testified about 9-millimeter shell casings and projectiles and an unfired 9-millimeter bullet that were recovered from the scene.

According to Dillworth, he had decided to go ahead and fix the damage to his automobile rather than wait for Loza to pay him.[4] Dillworth stated that on the evening of October 13, 2002, he was playing pool with some friends at a pool hall when he noticed new damage to his automobile; Dillworth testified that he went to Loza's residence to ask him if he knew anything about the new damage to his automobile. According to Dillworth, Loza invited him inside after speaking with him in the front yard. Dillworth testified that shortly after going inside, Loza and Anderson made sudden movements toward him so he pulled out his gun and shot both of them. Dillworth stated that he fired into Rickard's room because he was afraid that she might be coming out with a weapon. According to Dillworth, he fled the house, got into his automobile, and discarded the weapon on the way home. Dillworth was arrested at his residence and taken to the police station, where he admitted to the shootings but claimed that he fired the shots in self-defense.

"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" <u>Ballenger v. State</u>, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting

---

[3]There was conflicting evidence presented at trial as to whether Dillworth actually opened Rickard's bedroom door or whether Rickard opened the door and came up the hall.

[4]A receipt from a Montgomery auto body and repair shop was recovered from Dillworth's vehicle after it was impounded and searched following the shootings.

Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978).

"'Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.'" Seaton v. State, 645 So. 2d 341, 343 (Ala. Crim. App. 1994), quoting McCord v. State, 501 So. 2d 520, 528-29 (Ala. Crim. App. 1986). Intent "'"may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances."'" Farrior v. State, 728 So. 2d 691, 695 (Ala. Crim. App. 1998), quoting Jones v. State, 591 So. 2d 569, 574 (Ala. Crim. App. 1991), quoting in turn Johnson v. State, 390 So. 2d 1160, 1167 (Ala. Crim. App. 1980). "'The intent of a defendant at the time of the offense is a jury question.'" C.G. v. State, 841 So. 2d 281, 291 (Ala. Crim. App. 2001), aff'd, 841 So. 2d 292 (Ala. 2002), quoting Downing v. State, 620 So. 2d 983, 985 (Ala. Crim. App. 1993).

Any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact to be resolved by the jury." Rowell v. State, 647 So. 2d 67, 69-70 (Ala. Crim. App. 1994). "'"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to

judge and determine."'" <u>Johnson v. State</u>, 555 So. 2d 818, 820
(Ala. Crim. App. 1989), quoting <u>Harris v. State</u>, 513 So. 2d
79, 81 (Ala. Crim. App. 1987), quoting, in turn, <u>Byrd v.
State</u>, 24 Ala.App. 451, 136 So. 431 (1931). More importantly,
"'[t]he question of the victim['s] credibility [is] one for
the jury and not for this Court." <u>Rowell</u>, 647 So. 2d at 69,
quoting <u>Coats v. State</u>, 615 So. 2d 1260 (Ala. Crim. App.
1992). "We have repeatedly held that it is not the province
of this court to reweigh the evidence presented at trial."
<u>Johnson</u>, 555 So. 2d at 820. "'When the jury has passed on the
credibility of evidence tending to establish the defendant's
guilt, this Court cannot disturb its finding.'" <u>Rowell</u>, 647
So. 2d at 69, quoting <u>Collins v. State</u>, 412 So. 2d 845, 846
(Ala. Crim. App. 1982). Furthermore, "'[t]his Court must view
the evidence in the light most favorable to the State, and
"draw all reasonable inferences and resolve all credibility
choices in favor of the trier of fact."'" <u>D.L. v. State</u>, 625
So. 2d 1201, 1204, (Ala. Crim. App. 1993), quoting <u>Woodberry
v. State</u>, 497 So. 2d 587, 590 (Ala. Crim. App. 1986). "Any
issues regarding the weight and credibility of the evidence
are not reviewable on appeal once the State has made a
prima facie case." <u>Jones v. State</u>, 719 So. 2d 249, 255 (Ala.
Crim. App. 1996), aff'd, 719 So. 2d 256 (Ala. 1998).

Anderson testified that Dillworth shot Loza in the head
at point blank range and then turned and shot him in the face
from a few feet away; according to Anderson, neither he nor
Loza had made any sudden movements toward Dillworth prior to
Dillworth's pulling out his pistol and shooting them. Rickard
testified that Dillworth opened her bedroom door and fired his
pistol at her. The victims' testimonies, if believed, was
alone sufficient to sustain Dillworth's convictions.

Moreover, as this Court noted in <u>Chestang v. State</u>, 837
So. 2d 867 (Ala. Crim. App. 2001),

"[i]n most cases, the issue of self-defense is one
of ultimate fact for determination by the jury.
<u>King v. State</u>, 478 So. 2d 318 (Ala. Crim. App.
1985). '"Where, as here, the killing was admitted,
the question of whether or not it was justified
under the theory of self-defense was a question for
the jury."' <u>Quinlivan v. State</u>, 627 So. 2d 1082,
1087 (Ala. Crim. App. 1992), quoting <u>Townsend v.</u>

6

> State, 402 So. 2d 1097, 1098 (Ala. Crim. App.
> 1981)."

837 So. 2d at 871.  Dillworth admitted to shooting Loza and
Anderson, and to shooting at Rickard or in her direction.  The
jury apparently chose to disbelieve that Dillworth had acted
in self-defense.  The State having presented a prima facie
case, this Court will not go behind the jury's finding.

## II.

Dillworth also contends that the trial court erred in not
instructing the jury on criminally negligent homicide as a
lesser-included offense of intentional murder.  (Issue I in
Dillworth's brief.)  We disagree.

> "'A person accused of the greater offense has a
> right to have the court charge on lesser included
> offenses when there is a reasonable theory from the
> evidence supporting those lesser included offenses.'
> MacEwan v. State, 701 So. 2d 66, 69 (Ala. Crim. App.
> 1997).  An accused has the right to have the jury
> charged on '"any material hypothesis which the
> evidence in his favor tends to establish."'
> Ex parte Stork, 475 So. 2d 623, 624 (Ala. 1985).
> '[E]very accused is entitled to have charges given,
> which would not be misleading, which correctly state
> the law of his case, and which are supported by any
> evidence, however[ ] weak, insufficient, or doubtful
> in credibility,' Ex parte Chavers, 361 So. 2d 1106,
> 1107 (Ala. 1978), 'even if the evidence supporting
> the charge is offered by the State.'  Ex parte
> Myers, 699 So. 2d 1285, 1290-91 (Ala. 1997), cert.
> denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d
> 648 (1998).  However, '[t]he court shall not charge
> the jury with respect to an included offense unless
> there is a rational basis for a verdict convicting
> the defendant of the included offense.'
> § 13A-1-9(b), Ala. Code 1975.  'The basis of a
> charge on a lesser-included offense must be derived
> from the evidence presented at trial and cannot be
> based on speculation or conjecture.'  Broadnax v.
> State, 825 So. 2d 134, 200 (Ala. Crim. App. 2000),
> aff'd, 825 So. 2d 233 (Ala. 2001), cert. denied, 536

U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002).
'"A court may properly refuse to charge on a lesser
included offense only when (1) it is clear to the
judicial mind that there is no evidence tending to
bring the offense within the definition of the
lesser offense, or (2) the requested charge would
have a tendency to mislead or confuse the jury."'
Williams v. State, 675 So. 2d 537, 540-41 (Ala.
Crim. App. 1996), quoting Anderson v. State, 507
So. 2d 580, 582 (Ala. Crim. App. 1987)."

Clark v. State, [Ms. CR-99-1062, June 27, 2003] ___ So. 2d
___, ___ (Ala. Crim. App. 2003).

Section 13A-6-4(a), Ala. Code 1975, provides that "[a]
person commits the crime of criminally negligent homicide if
he causes the death of another person by criminal negligence."
Section 13A-2-2(4), Ala. Code 1975, defines criminal
negligence as follows:

"A person acts with criminal negligence with
respect to a result or to a circumstance which is
defined by statute as an offense when he fails to
perceive a substantial and unjustifiable risk that
the result will occur or that the circumstance
exists.  The risk must be of such nature and degree
that the failure to perceive it constitutes a gross
deviation from the standard of care that a
reasonable person would observe in the situation."

In Molton v. State, 651 So. 2d 663, 666 (Ala. Crim. App.
1994), this Court held:

"It is clear that '"a charge on a lesser
included offense is not proper unless there is a
reasonable theory from the evidence to support such
a proposition."' Isom v. State, 497 So. 2d 208, 210
(Ala. Cr. App. 1986) (quoting Clark v. State, 451
So. 2d 368, 373 (Ala. Cr. App. 1984)).  Accord
Garrick v. State, 589 So. 2d 760, 764 (Ala. Cr. App.
1991).  In a homicide prosecution,

"'[a]n instruction on criminally negligent
homicide is proper only where the victim's

8

death was caused by the defendant's
inadvertent creation and subsequent
disregard of a risk of harm of which he
should have been aware, but which in fact
he was not aware of.... To warrant the
giving of such an instruction there must be
some evidence that the defendant was not
aware of the risk he was creating.'

"Wiggins v. State, 491 So. 2d 1046, 1048 (Ala. Cr.
App. 1986) (emphasis in original). See also Ala.
Code 1975, §§ 13A-6-4(a); 13A-2-2(4). Where, as in
the present case, the evidence establishes only that
the 'defendant intentionally fired his pistol either
at or in the direction of another human being,' such
'conduct excludes the possibility of negligent or
inadvertent risk creation' and there is 'simply no
rational basis for a verdict of criminally negligent
homicide.' Lawson v. State, 476 So. 2d 116, 119
(Ala. Cr. App.), cert. quashed, 476 So. 2d 122 (Ala.
1985). Accord Robinson v. State, 441 So. 2d 1045,
1047 (Ala. Cr. App. 1983). Cf. Harper v. State, 534
So. 2d 1137, 1139 (Ala. Cr. App. 1988) (where
appellant pointed a gun at victim and shot him,
'[h]er actions were undoubtedly intentional, and she
was not entitled, to a jury instruction based on
"reckless" behavior'). Under the facts of this
case, there was no error in the trial court's
refusal to instruct the jury on criminally negligent
homicide."

651 So. 2d at 666-67.

In this case, the undisputed evidence was that Dillworth
intentionally fired his pistol at Loza and Anderson, hitting
both of them and resulting in Loza's death, and fired his
pistol either at Rickard or in her direction. The undisputed
evidence also indicated that Dillworth had been involved in a
previous incident where, while discussing a car wreck with
Loza, Anderson approached Dillworth's car and struck a nearby
vehicle with a hammer in a manner which Dillworth
characterized as aggressive, and Dillworth admitted that he
took his pistol with him the day of the shootings because of
the previous confrontation. Clearly, Dillworth's own actions

9

in arming himself before approaching Loza's residence established that he perceived the risk that an altercation might ensue, and his own testimony indicates that he intentionally fired the gun at or in the direction of all three victims. Unquestionably, discharging a firearm at or in the direction of an individual creates a "substantial and unjustifiable risk" that the victim may die from injuries he sustained. We reject the argument that a reasonable person in such a situation would not perceive the risk of death to the victim. We cannot conclude that Dillworth was unaware of the potential outcome of such an encounter. There was no evidence indicating that Dillworth's conduct was negligent and, thus, there was no rational basis for a charge on criminally negligent homicide. The trial court properly denied Dillworth's requested instruction on criminally negligent homicide.

### III.

Dillworth next contends that the trial court erred in denying his motion for a continuance to secure the presence of witness Sharon Williams. and the subsequent denial of his motion for a mistrial based on the trial court's denial of that motion. (Issue III in Dillworth's brief.) Specifically, he argues that Williams's testimony was necessary to corroborate his version of events during a September 15, 2002, confrontation between Dillworth, Loza, and Anderson, and, further, to refute Anderson's expected testimony about that incident.

Before jury selection, the trial court conducted a hearing at which time defense counsel requested a continuance so that he could attempt to locate Sharon Williams, who had been subpoenaed for trial but was not present in the courtroom. The trial court denied the motion for a continuance but issued an attachment for the witness. The trial court denied Dillworth's motion for a mistrial at the close of the evidence.

As noted above, in September 2002, Loza had backed his automobile into Dillworth's automobile which was parked across the street from Loza's driveway; according to Dillworth, Loza had agreed to pay for the damages. On September 13, 2002, and again on September 15, 2002, Dillworth went to Loza's

residence seeking money for the damages to his automobile. According to the defense, Williams, who lived next door to Loza at the time of the shooting, was expected to testify that on September 15, 2002, she observed Dillworth and Loza in a discussion in the front yard, that Dillworth got back into his automobile and made a cellular telephone call, and that Anderson walked up and struck a vehicle parked behind Dillworth's automobile with a hammer.

It is well settled that "[t]he decision to grant or to deny a continuance is within the sound discretion of the trial court, and that decision will not be overturned absent an abuse of that discretion." Butler v. State, 668 So. 2d 150, 151 (Ala. Crim. App. 1995). See also Arnold v. State, 601 So. 2d 145 (Ala. Crim. App. 1992), and Brown v. State, 701 So. 2d 314 (Ala. Crim. App. 1997). In Butler, this Court, quoting Ex parte Saranthus, 501 So. 2d 1256, 1257 (Ala. 1986), stated:

> "The Alabama Supreme Court has described the standard to be used in determining whether a motion for a continuance should be granted:
>
> > "'If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence.'"

668 So. 2d at 151. In Smith v. State, 698 So. 2d 189 (Ala. Crim. App. 1996), this Court stated:

> "To warrant a continuance on the ground that a witness is absent, it must be shown that the expected testimony of the witness is material and competent, that there is a probability that the evidence will be forthcoming if the case is continued, and that the moving party exercised due diligence to secure the evidence. Ex parte

11

Saranthus, 501 So. 2d 1256 (Ala. 1986). ... It must be shown that substantially favorable testimony would be given by the witness and that the denial of a continuance would materially prejudice the defendant. Whitehead v. State, 429 So. 2d 641 (Ala. Cr. App. 1982). In addition, it must be established that the expected testimony is not merely cumulative or in the nature of impeachment, and the motion for a continuance must not be made merely for purposes of delay. Mitchell v. Moore, 406 So. 2d 347 (Ala. 1981); Malone v. State, 659 So. 2d 1006 (Ala. Cr. App. 1995); McClellan v. State, 628 So. 2d 1026 (Ala. Cr. App. 1993); Prince v. State, 623 So. 2d 355 (Ala. Cr. App. 1992).

698 So. 2d at 205.

Rule 17.5, Ala.R.Crim.P., provides that "[a]ny witness who, after being subpoenaed, fails to appear at the time and the place as required by the subpoena, or who fails to remain until released, may be attached by order of the court." In Weaver v. State, 401 So. 2d 344 (Ala. Crim. App. 1981), this Court stated:

> "'Before it can be said that the accused has been denied this constitutional right, he must apply to the court for the issuance of an attachment and show to the court that the witness has been served with a subpoena a sufficient length of time before the trial to afford an opportunity to the witness to obey its mandate, that the witness is within the jurisdiction of the court, and that his attendance can be obtained within a reasonable time by the compulsory process, that such witness is absent without the procurement or consent of the accused, and that the testimony of the witness is material....'"

401 So. 2d at 349, quoting Thomas v. State, 15 Ala.App. 408, 73 So. 558 (1916).

12

Here, there was no showing that the witness's attendance could be obtained within a reasonable time. Although Williams was served with a subpoena, she apparently moved to Mobile before trial, and neither the State nor the defense were able to advise the Court as to where in Mobile she might be located.

Additionally, the desired testimony was expected to indicate that Anderson, wielding a hammer, interjected himself into the matter between Dillworth and Loza after Dillworth had gotten back into his automobile and was making a cellular telephone call, and that Anderson had struck a vehicle parked near Dillworth's automobile with that hammer. However, we note that Anderson testified at trial that he struck the tailgate of a truck with a hammer "with some pretty great force" (R. 197), as Dillworth was walking back to his automobile after Dillworth and Loza had finished talking about the money that Loza had agreed to pay Dillworth. Further, although there was evidence that Anderson had previously told the police that Dillworth brandished his pistol during the September 15, 2002, encounter, Anderson testified at trial that Dillworth did not actually present the gun until after he had struck the truck with the hammer. Additionally, Rickard testified that Dillworth was out of the front yard and in the street before Anderson hit the truck with the hammer. Although there was testimony that the police seized a nine-millimeter pistol from Dillworth on September 15, 2002, the testimony further indicated that Dillworth was not charged with any offenses resulting from that incident, that he had a pistol permit to carry the pistol, and that he was allowed to recover the pistol from the police the following day at the police station. Dillworth testified that after the conclusion of his conversation with Loza on September 15, 2002, he returned to his automobile; that he heard a loud noise and reached for his gun; that he saw Anderson approaching with an object in his hand so he got out of his automobile and determined that Anderson was holding a hammer; that Anderson yelled for Loza to call the police, so Dillworth got back into his automobile, pulled into his friend's driveway across the street, and called emergency-911 himself.

Although none of the witnesses actually testified that Dillworth was back inside his automobile when Anderson struck the truck with the hammer, all of the testimony clearly

13

indicated that the conversation between Dillworth and Loza had concluded and that Dillworth had left Loza's yard and was going toward his automobile. As for the expected corroborative value of Williams's testimony, Anderson's testimony sufficiently corroborated Dillworth's version of events involving the hammer. Dillworth has not shown that the expected testimony would not merely be cumulative of most of the testimony presented at trial or that the absence of Williams's testimony materially prejudiced him. Therefore, Dillworth is not entitled to relief on this claim.

IV.

Finally, Dillworth contends that his sentences are excessive and disproportionate based on the evidence and on the fact that he is a first-time offender. (Issue V in Dillworth's brief.)

It is well settled that "[w]here a trial judge imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal absent a showing of an abuse of the trial judge's discretion." Alderman v. State, 615 So. 2d 640, 649 (Ala. Crim. App. 1992). "The exception to this general rule is that 'the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights.'" Brown v. State, 611 So. 2d 1194, 1197 (Ala. Crim. App. 1992) quoting Ex parte Maddox, 502 So. 2d 786, 789 (Ala. 1986). Furthermore, "[t]he decision whether a sentence is to run consecutively or concurrently with another sentence is within the sound discretion of the trial judge." Holmes v. State, 497 So. 2d 1149, 1152 (Ala. Crim. App. 1986).

Manslaughter and assault in the first degree are both Class B felonies. See §§ 13A-6-3 and 13A-6-20, Ala. Code 1975. A Class B felony is punishable by not more than 20 years' or less than 2 years' imprisonment. See § 13A-5-6(a)(2), Ala. Code 1975. Attempted assault in the first degree is a Class C felony. See §§ 13A-4-2 and 13A-6-20, Ala. Code 1975. A Class C felony is punishable by not more than 10 years' or less than 1 year and 1 days' imprisonment. See § 13A-5-6(3), Ala. Code 1975. Dillworth was sentenced to 20 years' imprisonment for the manslaughter

14

conviction, to 10 years' imprisonment for the assault-in-the-first-degree conviction, and to 10 years' imprisonment for the attempted- assault-in-the-first-degree conviction; these sentences were within the statutory range.

Although Dillworth presented character evidence and evidence that he was a first-time offender, the evidence also indicated that there were three victims, one of whom died from a gunshot wound to the head fired at point-blank range; one of whom was shot in the face from only a few feet away, but survived after an extended stay in the hospital; and one of whom was uninjured. Thus, although he may have been a first-time offender, we are not persuaded by Dillworth's argument that his sentences were excessive and disproportionate. Therefore, we find no abuse of the trial court's discretion in sentencing Dillworth to concurrent 10-year terms for the assault and attempted-assault convictions, and ordering those sentences to run consecutively to the 20-year term it imposed for the manslaughter conviction.[5]

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed by memorandum.

McMillan, P.J., and Cobb and Wise, JJ., concur. Baschab, J., concurs in the result.

---

[5]To the extent that Dillworth contends that his sentence is in violation of the Eighth Amendment of the United States Constitution, that claim is not preserved for appellate review because, as he concedes in his brief, he did not raise that challenge before the trial court. "Even constitutional claims may be waived on appeal if not specifically presented to the trial court." Brown v. State, 705 So. 2d 871, 875 (Ala. Crim. App. 1997).

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
## THE ALABAMA COURT OF CRIMINAL APPEALS

*Brendk*
*64533*

CR-03-0861

Marcus C Dillworth v. State of Alabama  (Appeal from Montgomery  Circuit Court:
CC03-251)

## CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on October 22nd 2004:

### Affirmed by Memorandum.

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure, it is hereby certified that the aforesaid judgment is final.

**Witness. Lane W. Mann, Clerk**
**Court of Criminal Appeals, on this**
**the 10th day of November, 2004.**

**Clerk**
**Court of Criminal Appeals**
**State of Alabama**

cc: Hon. Truman Hobbs, Circuit Judge
    Hon. Melissa Rittenour, Circuit Clerk
    Jacob Ari Dubin, Attorney
    Cecil G. Brendle, Jr., Asst. Atty. Gen.

*Brendle*
*91092*

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals
### State of Alabama
Judicial Building, 300 Dexter Avenue
### P. O. Box 301555
### Montgomery, AL 36130-1555

RELEASED

JUN 23 2006

CLERK
ALA COURT CRIMINAL APPEALS

**H.W."BUCKY" McMILLAN**
Presiding Judge
**SUE BELL COBB**
**PAMELA W. BASCHAB**
**GREG SHAW**
**A. KELLI WISE**
Judges

**Lane W. Mann**
Clerk
**Gerri Robinson**
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

### MEMORANDUM

CR-05-0840              Montgomery Circuit Court CC-03-251.60

Marcus Cornelius Dilworth v. State of Alabama

COBB, Judge.

Marcus Dilworth appeals the circuit court's denial of his petition for post-conviction relief filed pursuant to Rule 32, Ala. R. Crim. P. The petition sought relief from his January 2004 conviction and sentence of attempted assault, assault in the first degree, and reckless manslaughter.[1] The instant petition was filed October 21, 2005. The State filed an answer and a motion for summary disposition, and the trial

---

[1]Dilworth was indicted on one count of murder and two counts of attempted murder. He was convicted on the lesser included charges. (C. 40.)

1

court denied Dilworth's petition without a hearing.  (C. 26-31, 40-42.)

In his petition and on appeal Dilworth claimed that he was denied the effective assistance of counsel at trial.[2] Specifically, Dilworth alleges that his trial counsel did not properly prepare for trial because trial counsel did not attack the fact that the State did not present any medical records or expert testimony that the victim suffered serious physical injury.  He also argues that he received ineffective assistance of counsel because trial counsel withdrew from the case less than a week prior to the hearing on his Motion to Reconsideration of Sentencing and Motion for a New Trial. Dilworth further contends he did not receive effective assistance of counsel because trial counsel failed to ensure that the jury returned a unanimous verdict.  He alleges that he received ineffective assistance of counsel because trial counsel did not object to certain statements made by the prosecutor in closing arguments.  Dilworth also contends that he received ineffective assistance of counsel because trial counsel failed to object to the admittance of a blanket allegedly containing bullet holes and a Styrofoam bust containing a dowel which showed the entry and exit wounds of the victim.  Finally, Dilworth argues he received ineffective assistance of counsel because trial counsel did not object to the jury purportedly not being sworn.

> "'"In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984):
>
> "'"'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was

_____

[2]In his petition Dilworth also claimed that his sentence exceeded the maximum allowed by law and that the trial court was without jurisdiction to render judgment or impose the sentence.  Dilworth, however, does not raise these issues on appeal. Moreover, nothing in the record suggests these claims are valid.

not functioning as the "counsel" guaranteed the
defendant by the Sixth Amendment.  Second, the
defendant must show that the deficient performance
prejudiced the defense.  This requires showing that
counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is
reliable.  Unless a defendant makes both showings,
it cannot be said that the conviction or death
sentence resulted from a breakdown in the adversary
process that renders the result unreliable.'
"'"466 U.S. at 687, 104 S.Ct. at 2064."'"

Hamm v. State, 913 So.2d 460, 480-82 (Ala. Crim. App. 2002)
(citations omitted).

The trial court incorrectly held that the appellate
counsel could have raised the issue of ineffective assistance
of trial counsel on appeal.  "'If the appellant can establish
that appellate counsel could not have reasonably asserted all
the allegations of ineffective assistance of trial counsel in
a timely filed motion for new trial -- thereby preserving the
claims for review on direct appeal -- then the appellant is
not precluded from raising ineffective assistance of trial
counsel claims in a Rule 32 petition.'" V.R. v. State, 852
So. 2d 194, 197 (Ala. Crim. App.2002) (quoting Andersch v.
State, 716 So. 2d 242, 245 (Ala. Crim. App. 1997)).

Dilworth was convicted on January 30, 2004, and his newly
appointed appellate counsel filed the notice of appeal on
February 26, 2004.  The trial transcript was not completed
until June 3, 2004, well after the 30-day period in which to
file a motion for a new trial.  Without the trial transcript,
Dilworth's appellate counsel would have been unable to raise
many of the issues Dilworth raises in his Rule 32 petition.

However, the circuit court properly denied Dilworth's
Rule 32 petition.  In reviewing the circuit court's denial of
Dilworth's petition, we will affirm the circuit court "[i]f
the circuit court is correct for any reason, even though it
may not be the stated reason.... See Roberts v. State, 516
So. 2d 936 (Ala. Cr. App. 1987)." Reed v. State, 748 So. 2d
231, 233 (Ala. Crim. App. 1999); Ex parte City of Fairhope,
739 So. 2d 35, 39 (Ala. 1999).

3

The trial judge who denied Dilworth's Rule 32 petition is also the same judge who presided over his trial.  As we have previously stated:

> "'[A] judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing on the effectiveness of those attorneys based upon conduct that he observed.'  <u>Ex parte Hill</u>, 591 So. 2d 462, 463 (Ala. 1991).  'If the circuit judge has personal knowledge of the actual facts underlying the allegations in the petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order.'  <u>Sheats v. State</u>, 556 So. 2d 1094, 1095 (Ala. Crim. App. 1989)."

<u>Boyd v. State</u>, 913 So. 2d 1113, 1126 (Ala. Crim. App. 2003).

Based on his personal observation of the trial and trial counsel's conduct during the trial, the trial judge made the following findings in pertinent part:

> "Dilworth was indicted for murder and two counts of attempted murder.  They jury convicted him of the lesser charges of manslaughter, assault and attempted assault.  His convictions were affirmed on appeal and he now files this Rule 32 Petition.....
>
> "Looking to the specific allegations, Petitioner alleges his attorney failed to properly prepare for trial.  The only specific offered is that his attorney failed to argue that the victim of the assault did not suffer serious physical injury....  As the opinion of the Court of Criminal Appeals noted, the victim of the assault suffered an 'extended stay in the hospital', satisfying the concern raised by Petitioner.  Furthermore, there was extensive testimony as to the severity of the victim's injury.
>
> "Petitioner argues that his attorney was ineffective for withdrawing before his Motions for Reconsideration of Sentencing and for New Trial were

4

heard.   . Petitioner has not shown how he was prejudiced by these actions.

"Petitioner next complains that the jury was charged on manslaughter and that counsel did not insure that the manslaughter verdict was unanimous. The decision to ask for or to allow a manslaughter charge was a strategic one which [trial counsel] believed, correctly so, to be in his client's best interest. It is ironic that, in his direct appeal, Petitioner contended that a negligent homicide charge should be given. Finally, it invites pure speculation to suppose that the jury was not unanimous in their verdict or that polling the jury specifically on the manslaughter would have made a difference.

"Petitioner's claims concerning the failure of his attorney to object to the closing argument or to certain items of evidence is meritless. Petitioner has failed to show any specific prejudice. Further, the remarks of the prosecutor were not improper nor was the evidence improperly admitted. Petitioner's arguments do no affect the admissibility of the evidence, only the conclusions that can be drawn from it."

(C. 41-42.)

As the trial court explained, Dilworth has failed to meet the burden established by <u>Strickland</u>. While the trial judge's order was based on his personal knowledge of the case, we have reviewed the record on appeal of Dilworth's direct appeal and find nothing to indicate that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, <u>supra</u>.

Furthermore, Dilworth's assertion that he received ineffective assistance of counsel because of trial counsel's supposed failure to request that the jury state whether the manslaughter conviction was premised on the a reckless or heat-of-passion theory is speculative and legally baseless. First, a petitioner cannot be granted relief based on

5

speculation. <u>Woods v. State</u>, [Ms. CR-02-1959] ___ So. 2d ___
(Ala Crim. App. 2005); <u>see also</u> <u>McNair v. State</u>, 706 So. 2d
828, 838 (Ala. Crim. App. 1997). Furthermore, Dilworth's
contention that recklessness and heat-of-passion are
distinctly different and the jury had to unanimously decide
between the two is incorrect.

Dilworth asserts that <u>Quinlivan v. State</u>, 627 So. 2d 1082
(Ala. Crim. App. 1992)[3], states, "The two alternatives are
distinctly different and the jury could only choose one
alternative." (Appellant's brief at p. 11.) However, no such
language exists in <u>Quinlivan</u>. Instead the following which
completely dispels Dilworth's argument is found in <u>Quinlivan</u>:

> "The appellant argues that '[b]ecause the two
> aspects of manslaughter require proof of different
> mental states, they are mutually exclusive crimes
> under the general heading of manslaughter.' Brief
> of the Appellant at 71. <u>Schad v. Arizona</u>, [501 U.S.
> 624 (1991)], provides the answer to that argument.
> In that case, the United States Supreme Court upheld
> the state court's determination that premeditated
> murder and felony-murder are not separate offenses;
> they are alternative means of satisfying the mental
> element of a single offense -- first degree murder.
> <u>Schad</u> also answers the appellant's argument that he
> was entitled to know which manslaughter alternative
> the jury found him guilty of at his first and second
> trials. In <u>Schad</u>, the Court held that a jury need
> not unanimously agree on one of the alternative
> theories (premeditated or felony-murder) for a first
> degree murder conviction. It is sufficient that the
> 'jury was unanimous in deciding that the State had
> proved, what, under state law, it had to prove: that
> petitioner murdered <u>either</u> with premeditation <u>or</u> in
> the course of committing a robbery.' <u>Schad v.
> Arizona</u>, [501 U.S. at 630]. 111 S.Ct. at 2496
> (emphasis added)."

---

[3]Dilworth cites <u>Quinlivan</u> as being at 627 So.2d 187 and
as being a 1991 decision of this Court.

<u>Quinlivan v. State</u>, 627 So. 2d at 1088.  Thus, the trial court was correct in denying Dilworth's petition as to this claim.
As the trial court aptly noted:

> "[Dilworth's] retained trial attorney is a noted veteran of the courtroom.  His efforts on Petitioner's behalf were both thorough and effective.  His client left a bar, drove to the victims' home, entered the home with a gun, shot one victim fatally in the head, wounded another in the face, and, for good measure, took at least one shot at the grandmother who was sequestered in her bedroom.  His claim of self-defense bordered on the ludicrous.  It was a testament to his attorney's skill that he was not convicted of murder and attempted murder."

(C. 41.)

For the foregoing reasons, the trial court's denial of Marcus Dilworth's Rule 32 petition is affirmed.

AFFIRMED.

McMillan, P.J., and Shaw, and Wise, JJ., concur.
Baschab, J., concurs in the result.

7

# IN THE SUPREME COURT OF ALABAMA  *91092*



December 8, 2006

**1051573**

Ex parte Marcus Cornelius Dilworth.  PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS  (In re: Marcus Cornelius Dilworth v. State of Alabama)   (Montgomery Circuit Court: CC03-251.60; Criminal Appeals : CR-05-0840).

## <u>CERTIFICATE OF JUDGMENT</u>

### <u>Writ Denied</u>

    The above cause having been duly submitted, IT IS CONSIDERED AND ORDERED that the petition for writ of certiorari is denied.

    PARKER, J. -  Nabers, C.J., and Lyons, Woodall, and Smith, JJ., concur.

> I Robert G. Esdale, Sr., as Clerk of the Supreme Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appear(s) of record in said Court.
>
> Witness my hand this ___8th___ day of ___December,  2006___
>
> *Robert G. Esdale Sr.*
>
> **Clerk, Supreme Court of Alabama**

/bb